UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>v.<br><br>JOSE LUIS AVALOS-PEREZ,<br><br>                         Defendant. | Case No.: 3:16-CR-02827-GPC-1<br><br>**ORDER DENYING MOTION TO DISMISS § 1326 PROSECUTION**<br><br>[Dkt. No. 16] |

Defendant Jose Luis Avalos-Perez moves to dismiss the indictment against him on the grounds that his two prior removals were invalid and cannot support a prosecution under 8 U.S.C. § 1326. Dkt. No. 16. Upon review of the moving papers and the applicable law, and for the reasons discussed below, the Court **DENIES** the motion.

## **BACKGROUND**

On December 6, 2016, a federal grand jury in this district returned an indictment charging Defendant Avalos-Perez with Attempted Reentry of Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b). Dkt. No. 11.

Defendant, alias Saul Flores-Cosio, was born in Michoacan, Mexico on April 14, 1963. Def.'s Ex. G, Dkt. No. 16-2; Def.'s Ex. A, Dkt. No. 16-2. Although Avalos-Perez "grew up" in Mexico he came to the United States as a teenager and lived for a time in Escondido, California. Def.'s Ex. A, Dkt. No. 16-2. He later moved to Fresno,

California, then back to Escondido, and later on to Stockton, California. *Id.* For about five years, Avalos-Perez worked in agriculture, farming avocados, grapes, and citrus. *Id.*

While in the United States, Defendant amassed a criminal record. He was convicted of misdemeanor illegal entry under 8 U.S.C. § 1325 on February 7, 1986, December 19, 1986, March 2, 1989, and September 19, 1989. Govt.'s Resp., Dkt. No. 21 at 3. He was also convicted of misdemeanor possession of a controlled substance, in violation of Cal. Health & Safety Code § 11350, on December 12, 1988; obstruction of a police officer on May 5, 1995; and evasion of a police officer, a felony, on June 6, 1995 in violation of Cal. Veh. Code § 2800.2.[1] *Id.*

### 1. Stipulated Removal under 8 U.S.C. § 1229a(d)

On March 8, 2007, the Immigration and Naturalization Service (INS) issued a Notice to Appear (NTA) for removal proceedings under Section 240 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1229a. Def.'s Ex. B, Dkt. No. 16-2. The NTA alleged that Avalos-Perez entered the United States at or near Tecate, California on or about March 4, 2007 without being admitted or paroled after inspection by an Immigration Officer. *Id.* The NTA charged that he was subject to removal under Section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizens present without being admitted or paroled are inadmissible).

That same day, Avalos-Perez entered into a Stipulated Request for Removal Order and Waiver of Hearing with the United States Department of Justice, Executive Office for Immigration Review. Def.'s Ex. C, Dkt. No. 16-2. In the Request, Avalos-Perez

---

[1] The Court notes that Defendant does not contest the Government's recitation of his criminal history in his reply brief. *See generally* Dkt. No. 23. The Court further observes that Defendant's moving papers make reference to the same criminal and immigration history. *See, e.g.*, Dkt. No. 16 at 2 ("Avalos suffered some criminal convictions in the late 1980s and 1990s, however only one was a felony — for evading a peace officer"); Dkt. No. 23 at 9 (referencing Defendant's prior illegal entry misdemeanors); *id.* at 8 ("Mr. Avalos had misdemeanor convictions for illegal entry and obstructing a police officer, and a single felony conviction for evading a police officer."). The Court, therefore, is satisfied that the parties are operating on the same set of facts as to Defendant's criminal history.

waived his right to have a hearing before an Immigration Judge ("IJ"), admitted all of the factual allegations contained within the NTA, and waived his right to appeal the written order of removal. *Id.* This Stipulated Request was followed by a Government's Concurrence to Stipulated Request For Removal Order and Waiver of Hearing, Def.'s Ex. D, Dkt. No. 16-2, and a Decision and Order of the Immigration Judge that ultimately approved the Stipulated Request, Def.'s Ex. E, Dkt. No. 16-2. In the Decision and Order, the Immigration Judge ordered that Avalos-Perez be removed from the United States to Mexico pursuant to Section 240(d) of the INA, 8 U.S.C. § 1229a.[2]

### 2. Expedited Removal under 8 U.S.C. § 1225(b)(1)

Just under a week later, on March 14, 2007, Avalos-Perez received a Notice and Order of Expedited Removal (NER) in a Section 235(b)(1) removal, 8 U.S.C. § 1225(b)(1). Def.'s Ex. F, Dkt. No. 16-2. The NER charged that Defendant was inadmissible under Section 212(a)(7)(A)(i)(I) of the INA (visa issued without compliance) and further stated that Defendant was:

> an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; to wit: You have entered the United States illegally with the intent of residing in Los Angeles, California for the purpose of employment.

*Id.* During the processing, Avalos-Perez completed a Record of Sworn Statement in Proceedings ("Sworn Statement"). Def.'s Ex. G, Dkt. No. 16-2. In it, he admitted that he did not have any legal authority to enter or work in the United States, that he had never applied for legal status, and that he had no family residing in the United States. *Id.* He added that he had entered the U.S. illegally in order to work and that he had last entered

---

[2] "The Attorney General shall provide by regulation for the entry by an immigration judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States." 8 U.S.C. § 1229a(d).

the United States "three days ago, through the mountains."³ As part of the expedited removal proceeding, Avalos-Perez also completed, and signed, a Jurat for Record of Sworn Statement. Def.'s Ex. H, Dkt. No. 16-2. The Jurat stated that Avalos-Perez left Mexico "to go to Los Angeles to get money from his family and work" and that he had no fear or concern that he would be harmed if returned to his home country. *Id.*

After processing, the INS ordered Defendant removed from the United States pursuant to Section 235(b)(1) of the INA. Def.'s Ex. F, Dkt. No. 16-2. The Order became final on March 14, 2007. *Id.*

## DISCUSSION

Avalos-Perez challenges his indictment under 8 U.S.C. § 1326 by contesting the validity of his March 8, 2007 and March 14, 2007 removals, both of which could serve as the predicate offense in a § 1326 prosecution. Defendant argues that because both his March 8 and March 14 removals were invalid, neither can serve as a basis for his § 1326 prosecution.⁴ Def.'s Mot. Dismiss ("DMD"), Dkt. No. 16 at 1. As discussed below, however, Avalos-Perez cannot avoid the § 1326 prosecution because the March 14 removal is valid.

### I. Collateral Attack under § 1326(d)

In *Mendoza-Lopez* the Supreme Court held that the only way to attack the validity of a deportation or removal order relied upon in a § 1326 prosecution is to argue that the issuance of the order violates the noncitizen's due process rights. *See U.S. v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). This right to challenge the validity of a prior

---

³ The Court observes that the Record of Sworn Statement indicates that the official questioning Defendant spoke Spanish and that he asked each question in English and in Spanish. *Id.* The Court further observes that the Record is not signed by the Defendant. *Id.* As such, and as Defendant points out, the Sworn Statement presents formidable reliability concerns. Accordingly, the Court does not rely on the contents of Defendant's Sworn Statement in reaching its conclusion.

⁴ In its response, the Government does not contest that Defendant's March 8 stipulated removal is invalid as an element of its § 1326 prosecution. *See* Govt.'s Resp., Dkt. No. 21 at 5 (citing to *United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010)). Accordingly and in light of the Government's concession, the Court will not consider the validity of the March 8, 2007 removal.

deportation removal order is codified at 8 U.S.C. § 1326(d). *See U.S. v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015).

Under § 1326(d), a noncitizen must satisfy three requirements in order to successfully challenge a removal order. The individual must show (1) that he exhausted administrative remedies that may have been available to seek relief against the order; (2) that the removal proceedings improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *see also Gonzalez-Flores*, 804 F.3d at 926.

## II. <u>Administrative Exhaustion & Deprivation of Judicial Review</u>

Defendant has satisfied the first two prongs of § 1326(d), requiring a defendant to demonstrate that he exhausted available administrative remedies and that the removal proceeding deprived him of an opportunity for judicial review. *See* 8 U.S.C. § 1326(d)(1), (2).[5]

Expedited removals of inadmissible arriving noncitizens, like Avalos-Perez, do not provide for administrative review except in the instance of a noncitizen claiming asylum or claiming to be a legal permanent resident. 8 U.S.C. § 1225(b)(1)(C); *see also U.S. v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011). As Avalos-Perez was neither at the time of the expedited removal order, the Court concludes that there were no administrative remedies available for Avalos-Perez to exhaust.

As to a meaningful opportunity for judicial review, that too is foreclosed by expedited removal proceedings brought under 8 U.S.C. § 1225. "Congress expressly deprived courts of jurisdiction to hear a direct appeal from an expedited removal order." *Barajas-Alvarado*, 655 F.3d at 1081; 8 U.S.C. § 1252 ("Judicial review of orders of removal"); *see also* 8 U.S.C. § 1225(b) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section

---

[5] The Court further observes that the Government, in its opposition brief, does not challenge Defendant's assertion that he has satisfied the first two prongs of § 1326(d). *See generally* Dkt. No. 21.

5

212(a)(6)(C) or 212(a)(7), the officer shall order the alien removed from the United States without further hearing or review . . . ."). Accordingly, *Barajas-Alvarado* specifically concluded that "the INA precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order [under 8 U.S.C. § 1225]." As such, this Court likewise concludes that the nature of Avalos-Perez's removal proceeding deprived him of any meaningful judicial review.

### III. Fundamental Unfairness

In order to establish that a predicate removal was "fundamentally unfair," a noncitizen must demonstrate that the proceeding (1) violated the noncitizen's due process rights and (2) that the noncitizen suffered prejudice as a result. *Barajas-Alvarado*, 655 F.3d at 1085. To establish prejudice, a noncitizen must demonstrate that grounds for relief were plausibly available at the time of removal.

Defendant alleges that the March 14 expedited removal was invalid because he was administratively processed without a qualified interpreter, without being advised of available relief, and without the opportunity to review his sworn statement. DMD, Dkt. No. 16 at 10. Avalos-Perez further asserts that the was prejudiced by these due process violations because he plausibly would have been eligible to withdraw his application for admission, thus avoiding any final removal order. *Id.* at 16.

Notwithstanding any due process violations, however, this Court concludes that Defendant has failed to demonstrate that he was plausibly eligible for relief from removal. Accordingly, Defendant did not suffer any prejudice as a result of the alleged due process violations and, thus, he has failed to demonstrate that the March 14 removal was fundamentally unfair.

#### 1. Prejudice – Relief from Removal

Withdrawal of an application for admission is a discretionary form of relief. *See* 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 1235.4; *see also U.S. v. Rojas-Pedroza*, 716 F.3d 1253, 1264 (9th Cir. 2012). When a noncitizen relies on a form of discretionary relief to argue prejudice, courts engage in a two-step process to determine whether or not it was

6

plausible that the immigration official would have favorably exercised his or her discretion and granted the noncitizen relief from removal. *Rojas-Pedroza*, 716 F.3d at 1263 ("Where the relevant form of relief is discretionary, the alien must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor.").

First, the court must identify the factors that inform an officer's discretion to grant relief. *Id.* Second, the court must assess whether "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* The focus of the second inquiry is on "whether aliens with similar circumstances received relief," not whether general statistics lend support. *Id.*

Defendants bear the burden of demonstrating that it was plausible that they would have been granted relief given their unique circumstances. *See U.S. v. Valdez-Novoa*, 780 F.3d 906, 917 (9th Cir. 2015) ("We reaffirm that the burden to show prejudice rests with the defendant."); *see also Rojas-Pedroza*, 716 F.3d at 1264 (noting that defendants who rely on cases with noncitizens "in very different factual circumstances" fail to meet their "burden of showing it was plausible he would have been granted relief"). A defendant need not show that he "actually would have been granted relief" in order to prove plausibility. *U.S. v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004).[6] Rather, a defendant need only establish "some evidentiary basis on which relief could

---

[6] In his opening brief, Defendant cites to *U.S. v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2013) for the proposition that: "Once the defendant makes a prima facie showing that he had a plausible ground for relief, the burden shifts to the government to "demonstrate that the procedural violation **could not** have changed the proceedings' outcome." DMD, Dkt. No. 16 at 17 (emphasis in original). The Court observes, however, that this burden-shifting language is no longer in use by the Ninth Circuit. *See Valdez-Novoa*, 780 F.3d at 917 ("All of our recent cases have discarded the burden-shifting language in favor of the more straightforward statement that the defendant bears the burden of proving prejudice under § 1326(d)(3)"). As such, the Court will follow suit and simply analyze whether Defendant has demonstrated "plausible grounds" for relief. *Id.*

7

have been granted." *U.S. v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014). "[E]stablishing plausibility[ , however,] requires more than establishing a mere possibility." *U.S. v. Garcia-Gonzalez*, 791 F.3d 1175, 1180 (9th Cir. 2015) (citation omitted).

### a. Withdrawal of an Application for Admission

"An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). Although Avalos-Perez did not formally request admission to the United States, he is nonetheless considered an applicant for admission who is eligible for "withdrawal of application for admission." *Id.*; *see also Raya-Vaca*, 771 F.3d at 1206. Withdrawal of an application for admission, where permitted, acts as an alternative to removal proceedings brought under Section 235 of the INA, 8 U.S.C. § 1225, which is the proceeding at issue here. 8 C.F.R. § 1235.4. Accordingly, when a noncitizen is permitted to withdraw his application, he avoids removal proceedings, and the onerous consequences that flow from removal orders, altogether. *See* 8 U.S.C. § 1182(a)(9)(A) (stating that aliens previously removed are inadmissible for a number of years following removal).

While an arriving noncitizen may ask to withdraw his application for admission, utltimately the grant of such relief is discretionary. *See* 8 C.F.R. § 1235.4; *see also Barajas-Alvarado*, 655 F.3d at 1089. The Ninth Circuit has observed that there is "scant guidance" addressing how and when an immigration officer should exercise discretion to grant withdrawal of application for admission. *Id.*

One source of guidance is the Inspector's Field Manual ("IFM"), an agency-prepared guidance document. *Id.* at 1090. The Inspector's Field Manual directs an immigration officer to consider six, non-exhaustive factors when evaluating a noncitizen's request to withdraw: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or

8

poor health of the alien; and (6) other humanitarian or public interest considerations. *Id*. Crucially, the Inspector's Field Manual also states that an "expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant." INS Inspector's Field Manual § 17.2(a), *available at* Westlaw FIM-INSFMAN 17.2 ("IFM").

Yet another source of guidance, of course, is the regulation that codifies a noncitizen's right to seek withdrawal of his application for admission.

> The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings. . . . The alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission. Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately.

8 C.F.R. § 1235.4; *see also U.S. v. Cisneros-Resendiz*, 656 F.3d 1015, 1020 n.9 (9th Cir. 2011) (observing that "immigration officers are guided by" "8 C.F.R. § 1235.4, as well as the Inspector's Field Manual").

### 2. Plausibility of Relief Given Defendant's "Unique Circumstances"

#### a. IFM factors

Notwithstanding Defendant's protestations to the contrary, the Inspector's Field Manual factors do not demonstrate that he was plausibly eligible for relief from removal.

##### (i) Seriousness of Immigration Violation

For one, Defendant's immigration violation was serious given his previous convictions for illegal reentry. As the Government points out, Defendant was convicted for illegal reentry under 8 U.S.C. § 1325 (Improper entry by a noncitizen) on two separate occasions in 1986 and on another two separate occasions in 1989. Govt.'s Resp., Dkt. No. 21 at 3. That Defendant had been convicted four times of illegally reentering the country, and had been removed just a week earlier, demonstrates that Defendant was a recidivist immigration violator at the time of his expedited removal. *See*

*Raya–Vaca*, 771 F.3d at 1208 (noting that a history of illegal reentries contributed to the seriousness of the offense). Such repeated attempts to illegally reenter the country contribute to the seriousness of his violation on March 14, 2007 and weigh against the plausibility of relief. *But see id.* (noting that recidivism is not dispositive as frequent immigration violators are permitted to withdraw their applications for admission).

In reaching this conclusion, the Court was unpersuaded by Defendant's suggestion that this factor actually weighs in his favor because he did not commit fraud in the course of his entry. *See* DMD, Dkt. No. 16 at 18. In fact, all of the records memorializing the March 14, 2007 removal refer to a Saul Cosio-Flores, not Jose Luis Avalos-Perez. *See* Def.'s Ex. F, G, H. That the removal record refers to a different name, and even contains a signature in that name, suggests that Defendant knowingly misrepresented his identity in order to gain admission. Thus, as to this factor, the uncontradicted facts do not weigh in Defendant's favor.

Yet even without a finding of fraud, the Court's conclusion above remains the same. While it is true that fraud adds severity to a violation because it "ordinarily make[s] an alien ineligible for withdrawal of relief," *see Barajas–Alvarado*, 655 F.3d at 1089, the absence of fraud does not somehow make this factor weigh in Defendant's favor. Even if Avalos-Perez' entry is not as serious as that in *Barajas-Alvarado*, for instance, because he did not present fake papers in order to gain admission, it is nonetheless serious given his four prior convictions for illegal re-entry. Accordingly, this factor weighs against Defendant.

### (ii) Previous findings of inadmissibility

Avalos-Perez was previously found inadmissible on March 7, 2007, when he left the United States via stipulated removal. The NTA charged Avalos-Perez with being inadmissible pursuant to § 212(a)(6)(A)(i) of the INA, which deems any noncitizen not admitted or paroled to be inadmissible. Def.'s Ex. B, Dkt. No. 16-2 at 6.

A previous finding of removability — albeit an invalid one — still weighs against the plausibility of relief. *See Garcia-Gonzalez*, 791 F.3d at 1179 ("Without regard to

whether it would support a § 1326 conviction, Garcia's removal in 2003 means the second factor from the Field Manual weighs against the availability of discretionary relief."); *see also Barajas-Alvarado*, 655 F.3d at 1090 (finding that second factor weighs against the noncitizen because he had two previous removals). Accordingly, the Court finds that this factor weighs against Defendant.

### (iii) Intent to Violate the Law

The IFM contrasts noncitizens who knowingly intend to enter the U.S. illegally with individuals who "may have innocently or through ignorance, misinformation, or bad advice obtained an inappropriate visa." INS Inspector's Field Manual § 17.2(a). Here, Defendant's four prior convictions under § 1326 and his removal just a week earlier evince an intent to violate the law, as opposed to any innocent mistake of admissibility. *See Raya-Vaca*, 771 F.3d at 1208. Accordingly and because Defendant does not contest this conclusion, the Court finds that this factor weighs against the plausibility of relief.[7]

### (iv) Ability to Easily Overcome Inadmissibility Grounds

This factor instructs immigration officials to assess whether the noncitizen could have nonetheless overcome the ground of inadmissibility charged in the removal order. *See Raya-Vaca*, 771 F.3d at 1208 n.13 (observing that the noncitizen need only overcome the ground of inadmissibility he was charged with, regardless of whether the noncitizen might have been inadmissible on other grounds). As the IFM explains,

> If the alien may readily overcome the inadmissibility by obtaining proper documents, the alien may be permitted to withdraw his or her application for admission and should also be appropriately advised of the necessary forms and requirements to overcome the grounds of inadmissibility.

INS Inspector's Field Manual § 17.2(a). Case law has further indicated that whether the noncitizen has a visa petition pending, or can obtain a visa through a

---

[7] Defendant asserts the following as to this factor: "Mr. Avalos presumably intended to enter without permission, though, without a chance to review the record of sworn statement." DMD, Dkt. No. 16 at 18. This argument fails to demonstrate that he lacked intent to violate the law.

11

spouse or other relative, are additional considerations probative of whether the noncitizen may be able to overcome the inadmissibility ground. *See Raya-Vaca*, 771 F.3d at 1208 (considered pending visa petitions and marriage to a United States citizen spouse as positive equities under the fourth prong).

Here, Defendant was charged as being inadmissible for lack of proper entry documents under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1181(a). *See* Def.'s Ex. F, Dkt. No. 16 at 20. Specifically, the Notice and Order of Expedited Removal states "You are an immigrant not in possession of a valid unexpired immigration visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act . . . ." *Id.*

Nothing in the record suggests that Defendant could have obtained proper documents in order to overcome this finding. Defendant has failed to produce any evidence demonstrating that he had a right to remain in the country, that he had any visa petitions pending in 2007, or that he could have obtained proper documents through family-based adjustment of status.[8] *See Raya-Vaca*, 771 F.3d at 1207 (defendant must produce "some evidentiary basis on which relief could have been granted."). It is, therefore, irrelevant that "the ground of inadmissibility was simply entry without inspection, not immigration fraud or a more serious ground of inadmissibility." DMD, Dkt. No. 16 at 18. Defendant has made no showing that he could have overcome any finding of inadmissibility. Accordingly, the Court finds that this factor also weighs against the plausibility of relief.

### (v) Age or Poor Health of Noncitizen

There is no indication in the record that Avalos-Perez was in poor health in 2007 and, at age 44, he was neither a youth nor elderly. *See Barajas-Alvarado*, 655 F.3d at 1090 (finding that this factor cut against plausibility of relief because the defendant, at

---

[8] Defendant asserts for the first time in his reply brief that he has children who "may be United States citizens." Such speculation, however, does not satisfy Defendant's evidentiary burden.

12

35, was neither "a youth nor elderly"). As such, this factor also weighs against Avalos-Perez. *See Raya-Vaca*, 771 F.3d at 1208 (concluding that "apparent good health" and age of 30-year old noncitizen did not support assertion that relief was plausible).

### (vi) Humanitarian and Public Interest Considerations

Avalos-Perez argues that his positive residence and work history in the United States, nonetheless weigh in favor of the plausibility of relief.[9]

Avalos-Perez, however, has not provided the Court with a single case that considered positive residence or work history as a factor in favor of granting withdrawal of application for admission. *See Rojas-Pedroza*, 716 F.3d at 1263 (noting that the plausibility inquiry is focused on whether noncitizens in similar circumstances received relief). Moreover, and even if Defendant had produced such a case, because work history and positive residence are not listed as considerations in the IFM, they carry little weight. *See Barajas-Alvarado*, 655 F.3d at 1091 (disregarding facts relied upon by the defendant because they were not considerations listed in the IFM); *see also Cisneros-Resendiz*, 656 F.3d at 1022 (noting that factors not "directly related to the issue of inadmissibility" do not help a defendant demonstrate plausibility of receiving permission to withdraw an application).

In addition, the Court further concludes that Defendant's criminal history — including misdemeanor convictions for possession of a controlled substance and obstruction of a police officer, along with a felony conviction for evading a police officer — negate any minimal humanitarian concern that flows from a positive work history and residence. Accordingly and because Defendant has failed to carry his burden of demonstrating that humanitarian concerns weighed in favor of withdrawal, the Court finds that this factor, too, weighs against the plausibility of relief.

---

[9] Defendant, in his reply brief, further argues that the fact that he "may" have two United States citizen children also weighs in his favor on this prong. However, and as discussed further in Section III.2.C, because there is no evidence in the record that Defendant has any U.S. citizen children, the Court does not lend any credence to the argument.

### b. 8 C.F.R. § 1235.4

The Court further concludes that yet another consideration weighing against the plausibility of relief is the timing of Defendant's March 14, 2007 expedited removal. Just six days prior to his expedited removal, Defendant Avalos-Perez was removed from the United States. DMD, Dkt. No. 16 at 18. That Defendant was removed from the United States just a week prior to his expedited removal proceeding, suggests, in the strongest of terms, that Defendant did not have any intent to depart from the United States immediately, as required by regulation. *See* 8 C.F.R. § 1235.4 ("Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately.").

Indeed, it is quite inconceivable to imagine that an immigration officer would have concluded that Avalos-Perez intended to leave the country voluntarily, when he had re-entered the United States within a week of a prior removal order and had been previously convicted of illegal entry on four separate occasions. Accordingly, the Court finds that the timing of Defendant's expedited removal also weighs heavily against the plausibility that Defendant would have received a discretionary grant of relief.

### c. Comparison to *Raya-Vaca*

Ultimately, Defendant's position rests on the purported similarities between his case and *Raya-Vaca*, where the court found permission to withdraw an admission application plausible. The Court, however, is unpersuaded that Avalos-Perez and Raya-Vaca found themselves in similar factual circumstances because Defendant lacks the familial ties and interest in familial unity present in *Raya-Vaca*. *See Rojas-Pedroza*, 716 F.3d at 1264 (noting that defendants who rely on cases with noncitizens "in very different factual circumstances" fail to meet their "burden of showing it was plausible he would have been granted relief").

The *Raya-Vaca* court, like this Court, found that the first five IFM factors weighed against the plausibility of relief. *See Raya-Vaca*, 771 F.3d at 1207-09 (reiterating that Raya-Vaca had not committed any fraud, had history of illegal entries, was a noncitizen

smuggler, had been removed only once before, could not have easily overcome inadmissibility, and was neither young nor old).

Notwithstanding that score, however, the *Raya-Vaca* court nonetheless concluded that relief from removal was plausible because the defendant had "significant humanitarian considerations counseling in favor of relief" under the sixth IFM prong. *Id.* at 1208. Specifically, the *Raya-Vaca* court noted that Raya-Vaca had extensive familial ties to the United States. *See id.* His long-term partner and brother were both United States citizens. *Id.* His two children were also United States citizens. *Id.* at 1198. In addition, his mother, siblings and much of his extended family were living in the United States at the time of his removal. *Id.* at 1208. Given these ties and in light of the "compelling humanitarian interest in keeping families united," the *Raya-Vaca* court found that these connections counseled heavily in favor of the plausibility of relief. *Id.* (citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) for the proposition that a noncitizen's "right to rejoin [his] immediate family . . . ranks high among the interests of the individual").[10]

The "significant humanitarian considerations" that led the *Raya-Vaca* court to conclude that relief from removal was plausible, however, are entirely absent here.

As an initial matter, the Court observes that Defendant does not assert family unity as a humanitarian consideration weighing in favor of the plausibility of relief in his motion to dismiss. *See* DMD, Dkt. No. 16, 16-18. In fact, he does not mention family at all in his initial moving papers. *See generally id.* Only in reply and after the Government

---

[10] The *Raya-Vaca* court found that additional considerations also counseled in favor of relief: namely, (1) his "fairly minimal" criminal history, which included misdemeanor burglary, obstruction of a police officer, and false identification to a police officer; (2) the fact that Raya-Vaca presented "a record from another case in which withdrawal of application for admission was granted"; and (3) statistics indicating that 70 percent of individuals subject to expedited removal proceeding were allowed to withdraw their applications. *Raya-Vaca*, 771 F.3d at 1208-09. The *Raya-Vaca* court's reasoning, however, leaves little doubt that the predominating factor weighing in favor of relief was Raya-Vaca's familial ties and in interest in familial unity. *See id.*

suggested that Avalos-Perez "may have U.S. citizen children" did Defendant argue that the "likelihood" of having United States children weighed in his favor. *See* Def.'s Reply, Dkt. No. 23 at 9-10.

The Court moreover concludes that the assertion that Defendant "may have" United States children is not a substitute for record evidence and is certainly not enough to carry Defendant's burden at the prejudice prong. *See Raya-Vaca*, 771 F.3d at 1207 (defendant must produce "some evidentiary basis on which relief could have been granted.").[11] Moreover, and even if such a speculation was entitled to some weight, the argument has been waived. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (finding district court did not err by not considering arguments raised for the first time on reply, because it "need not consider arguments raised for the first time in a reply brief.").

With no evidence in the record demonstrating that Avalos-Perez had any family residing in the United States at the time of his removal, the Court concludes that Avalos-Perez was not "similarly situated" to Raya-Vaca. The prejudice inquiry is a highly individualized one that requires courts to determine "based on the unique circumstances of the alien's own case" whether it was "plausible (not merely conceivable)" that the immigration official would have exercised discretion in the noncitizen's favor. *See Rojas-Pedroza*, 716 F.3d at 1263; *see also Raya-Vaca*, 771 F.3d at 1207 (noting that the IFM "provides for a highly individualized determination and instructs officers to consider all facts and circumstances related to the case"). As such, the Court must view Avalos-Perez's negative equities in light of his positive equities.

Here and as explained above, Defendant has made only a minimal showing of positive humanitarian interests weighing in favor of relief and all of the other IFM factors

---

[11] The Court observes, without reliance, that the Record of Avalos-Perez's Sworn Statement in the expedited removal proceeding actually indicates that Avalos-Perez replied "No" when asked whether or not he had any family residing in the United States. Def.'s Ex. G at 21, Dkt. No. 16-2 at 23.

weigh against him.  Accordingly, that some of his negative equities are not as bad as those in Raya-Vaca (i.e. that Raya-Vaca was an noncitizen smuggler and had more previous convictions for reentry after removal) is immaterial.  Raya-Vaca had tremendous positive equities, as evidenced by his extensive familial ties, that are entirely absent here, and that counterbalanced Raya-Vaca's negative equities.  This Court, therefore, concludes that even when viewing the plausibility of relief in light of the frequency with which withdrawal for relief of application is granted, Defendant has failed to carry his burden of demonstrating that relief was plausible.[12]

# CONCLUSION

For the reasons discussed above, the Court finds that the March 14, 2007 removal is valid because Defendant was not prejudiced by any due process errors that may have occurred and, therefore, the March 14 removal was not "fundamentally unfair." Accordingly, the Court **DENIES** Avalos-Perez's motion to dismiss the Government's § 1326 prosecution.

**IT IS SO ORDERED.**

Dated:  April 19, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

[12] Defendant also provided, in support of his motion to dismiss, statistics from the Department of Homeland Security indicating that, in 2007, nearly "half of the people subject to or eligible for expedited removal were allowed to withdraw their application." DMD, Dkt. No. 16 at 18.  Such statistics, however, do not change the Court's prejudice analysis or conclusion. The Ninth Circuit has strictly limited the probative value of statistics and has concluded that they are not enough, on their own, to demonstrate the plausibility of relief. *See, e.g.*, *Rojas-Pedroza*, 716 F.3d at 1263 ("In making this [prejudice] determination, we are not concerned with general statistics").  Here, and unlike in *Raya-Vaca*, where the court relied in part on DHS statistics, Defendant has not provided sufficient "individualized evidence" to support the plausibility of relief. *See Raya-Vaca*, 771 F.3d at 1209 (concluding that the DHS statistics provided "relevant context" and "when read in conjunction with other individualized evidence support[ed] the plausibility of relief . . . .").  Accordingly, and absent other indicia suggesting that relief would have been plausible, Avalos-Perez' statistical argument cannot carry his burden.